**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION**

| | |
|---|---|
| **KB COMPONENTS PLASTUNION AB** | **PLAINTIFF** |
| v. | Case No. _____ |
| **HUSQVARNA FORESTRY PRODUCTS, N.A. INC.; and HUSQVARNA CONSUMER OUTDOOR PRODUCTS, N.A. INC.** | **DEFENDANTS** |

## COMPLAINT

Comes now KB Components Plastunion AB ("KB Plastunion") and, for its Complaint against Husqvarna Forestry Products N.A., Inc. and Husqvarna Consumer Outdoor Products, N.A. Inc. (collectively, "Defendants"), states:

## INTRODUCTION

1. This Complaint is to collect on unpaid debts for components and goods supplied by Plaintiff KB Plastunion and accepted and retained by Defendants, and for which Defendants have refused to make payment.

## PARTIES

2. Plaintiff KB Components Plastunion AB is a corporate entity organized under the laws of Sweden, with a principal place of business in Anderstorp, Sweden. KB Plastunion is a manufacturer and supplier of certain plastic components. KB Plastunion is one of a group of entities belonging to the KB Components Group.

3. Husqvarna Forestry Products N.A., Inc. ("Husqvarna Forestry") is a Delaware corporation with a principal place of business in Nashville, Arkansas. Upon information and belief, Husqvarna Forestry owns and/or operates a manufacturing facility in Nashville, Arkansas where it manufactures various lawn and garden products.

4. Husqvarna Consumer Outdoor Products N.A., Inc. ("Husqvarna Outdoor") is a Delaware corporation with a principal place of business in Charlotte, North Carolina. Upon information and belief, Husqvarna Outdoor owns and/or operates a manufacturing facility in Nashville, Arkansas where it manufactures chainsaws, lawn mowers, and other outdoor equipment.

5. Husqvarna Forestry and Husqvarna Outdoor belong to the Husqvarna AB Group ("Husqvarna" or "Husqvarna Group").

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the parties and this cause of action pursuant to 28 U.S.C. § 1332 because 1) there is completely diversity of citizenship between Plaintiff (a citizen of Sweden), and Defendants (citizens of Delaware, Arkansas, and North Carolina), and 2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

**History of the Parties' Business Relationship**

8. KB Plastunion and Defendants, for many years, enjoyed a mutually beneficial business relationship.

9. As part of this business relationship, KB Plastunion and related entities manufactured and supplied various plastic components to companies within the Husqvarna Group, including Defendants. The Husqvarna companies used these plastic components in Husqvarna's products.

10. On October 15, 2007, KB Plaustunion and Husqvarna AB entered into a Supply Agreement to govern KB Plastunion's supply of plastic components to various Husqvarna entities.

Among other things, the Supply Agreement affixed a certain price to each plastic component KB Plastunion supplied to Husqvarna.

11. The Supply Agreement governed many business dealings between the parties, but the only dealing pertinent to this lawsuit involved KB Plastunion's supply of certain plastic components to Husqvarna operations in Nashville, Arkansas – Husqvarna Outdoor and Husqvarna Forestry.

12. Pursuant to the terms of the Supply Agreement, Defendants submitted monthly purchase orders to KB Plastunion for the purchase of plastic components.[1]  Each purchase order contained, among other things, a product description, the quantity needed, and a price per component.

13. After receiving each purchase order, but before shipping the components, KB Plastunion submitted an invoice to Defendants.  Each invoice contained, among other things, the quantity of components KB Plastunion was shipping to Husqvarna Forestry, the price per component, the due date for payment, and an applicable interest rate.

14. Each invoice identified Husqvarna Outdoor' as the "Payer" and Husqvarna Forestry as the delivery destination.

15. After submitting each invoice to Defendants, KB Plastunion would then ship the component to the address specified on the purchase order.  Defendants would then receive and maintain use and possession of the components.

16. Throughout the life of the parties' business relationship, KB Plastunion fulfilled every purchase order in full and to the satisfaction of Defendants.

---

[1] "Husqvarna Group – Nashville" submitted each purchase order to KB Plastunion with directions to ship the requested products to Husqvarna Forestry in Nashville, Arkansas.

1198192.3

17. At no time did Defendants notify KB Plastunion that its plastic components were damaged, defective, or otherwise not suitable for incorporation into Defendants' products.

18. In fact, at the outset, Defendants paid each invoice in full shortly after receiving each shipment.

19. This business arrangement pursuant to the Supply Agreement continued for nearly ten years.

**Termination of the Supply Agreement**

20. According to the Supply Agreement, Defendants were free to terminate the agreement upon written notice to KB Plastunion.  On September 1, 2016, Göran Rudén, VP Sourcing for Husqvarna, did so by an email to Lars Holtskog, Vice President of KB Components, communicating Husqvarna's intention to cancel the Supply Agreement.

21. Separately, on September 28, 2016, Husqvarna sent to KB Plastunion an additional letter confirming its intention to terminate the Supply Agreement.

22. On October 10, 2016, Husqvarna sent yet another letter, this time to KB Components' CEO Stefan Andersson, conveying that Husqvarna had terminated the Supply Agreement.

23. On November 8, 2016, the termination of the Supply Agreement was confirmed by email.

**The Parties' Continued Business Relationship**

24. Despite terminating the Supply Agreement, Defendants demanded that KB Plastunion continue supplying plastic components to its operations in Nashville, Arkansas.

25. To that end, Defendants continued the practice of sending purchase orders to KB Plastunion for the plastic components with directives to ship the components to Nashville,

Arkansas.

26. When fulfilling these subsequent purchase orders, KB Plastunion continued the practice of submitting invoices to Defendants outlining the product, quantity, and price, prior to shipment.

27. Notably, because Husqvarna unequivocally terminated the supply agreement, there existed no written contract affixing an agreed price to the plastic components. That being the case, when KB Plastunion submitted each invoice, it set a fair price.

28. Consistent with the parties' prior dealings, Defendants accepted each subsequent delivery and payed each invoice in full (at the price set by KB Plastunion).

29. Thus, Defendants accepted each delivery and retained the components with full knowledge and understanding as to the price. This evidenced acceptance of the prices set by KP Plastunion and established a course-of-performance.

**Husqvarna's Refusal to Pay for Goods Accepted and Retained**

30. The parties continued operating under this arrangement for approximately four years, during which time Defendants submitted numerous purchase orders for plastic components. Defendants accepted each delivery from KB Plastunion and paid each invoice in full at the price set by KB Plastunion.

31. However, beginning in early March 2020, Defendants violated the established business relationship by refusing to pay three outstanding invoices for plastic components, which they accepted and retained.

**First Invoice**

32.  On February 17, 2020, Defendants submitted a purchase order for 7,800 components.

33.  On March 10, 2020, KB Plastunion sent Defendants an invoice for $52,376.00, reflecting 7,800 components at approximately $6.71 per cap. The invoice required payment by May 10, 2020, with interest accruing at a rate of 11%.

34.  On March 11, 2020, KB Plastunion shipped the components to Nashville, Arkansas. Defendants accepted and retained the components, but, to date, have refused to satisfy the outstanding invoice. Interest continues to accrue on the outstanding debt due under the invoice at a rate of 11%.

**Second Invoice**

35.  On March 19, 2020, Defendants submitted another purchase order, this time for 5,400 components.

36.  On April 14, 2020, KB Plastunion sent Defendants an invoice for $36,271.00, reflecting 5,400 components at approximately $6.71 per cap. The invoice required payment by June 6, 2020, with interest accruing at a rate of 11%.

37.  On April 15, 2020, KB Plastunion shipped the components to Nashville, Arkansas. Defendants accepted and retained the components but, to date, have refused to satisfy the outstanding invoice. Interest continues to accrue on the outstanding debt due under the invoice at a rate of 11%.

**Third Invoice**

38.  On April 14, 2020, Defendants submitted a purchase order for 10,800 components.

39.  On May 25, 2020, KB Plastunion sent Defendants an invoice for $72,542.00,

reflecting 10,800 components at approximately $6.71 per cap. The invoice required payment by July 24, 2020, with interest accruing at a rate of 11%.

40. On May 27, 2020, KB Plastunion shipped the components to Nashville, Arkansas. Defendants accepted and retained the components but, to date, have refused to satisfy the outstanding invoice. Interest continues to accrue on the outstanding debt due under the invoice at a rate of 11%.

41. Despite accepting and retaining the plastic components, Defendants have refused to pay each of the outstanding invoices due for those components.

42. To date, Defendants owe to KB Plastunion $161,189.00, plus interest, for goods actually accepted and retained by Defendants. Upon information and belief, Defendants used KB Plastunion's plastic components for their financial benefit.

43. Arkansas Code Annotated § 16-22-308 permits KB Plastunion to recover its reasonable attorney's fees and costs associated with bringing this action.

## COUNT 1 – BREACH OF CONTRACT

44. KB Plastunion incorporates by reference the allegations set forth in paragraphs 1-43 above.

45. Defendants routinely submitted purchase orders for the purchase of plastic components, which constituted an offer for the purchase of goods.

46. In accordance with their established course of performance, KB Plastunion submitted an invoice for the plastic components at a price of $6.71 per cap, which constituted a counteroffer.

47. KB Plastunion fulfilled each purchase order by shipping the requested components to Nashville, Arkansas.

48. With full knowledge of KB Plastunion's price, Defendants accepted each shipment

in full and retained the plastic components, thereby accepting KB Plastunion's counteroffer.

49. To date, Defendants have refused to tender payment for the amounts owed under three outstanding invoices.

50. As a direct and proximate result of Defendants' refusal to satisfy the outstanding debt due under the invoices, KB Plastunion has suffered damages in an amount of $161,189.00, plus interest at a rate of 11%.

## **COUNT 2 - UNJUST ENRICHMENT**

51. KB Plastunion incorporates by reference the allegations set forth in paragraphs 1-50 above.

52. KB Plastunion provided plastic components to Defendants, who accepted and retained the plastic components. Upon information and belief, Defendants used the plastic components in the manufacturing of their products.

53. Based on the parties' long-established course of performance, which included KB Plastunion providing components to Husqvarna Forestry and receiving payment from Husqvarna Outdoor, KB Plastunion reasonably expected to be paid the value of components it supplied to Defendants.

54. Defendants were aware that KB Plastunion supplied the components with the expectation that it would be paid for the components at the rate set by KB Plastunion, as evidenced by the three invoices and the parties' course of performance resulting in payment to KB Plastunion.

55. Defendants accepted and retained the plastic components and have therefore received the value of the components.

56. Neither Husqvarna Forestry nor Husqvarna Outdoor was legally entitled to the components such that they had no obligation to tender payment. By retaining the components

8

without paying for them, they have been unjustly enriched.

57. KB Plastunion has been damaged by Defendants' failure to satisfy the outstanding debt for the goods actually accepted and retained, at the rate stated by KB Plastunion, in accordance with the parties' established course of performance.

58. Plaintiff demands a jury trial.

WHEREFORE, KB Components Plastunion AB prays that the Court enter judgment in its favor against Defendants for $161,189.00 plus pre- and post-judgment interest, costs, attorney's fees pursuant to Arkansas Code Annotated § 16-22-308, and any other appropriate relief to which it is entitled.

Respectfully submitted,

Byron J. Walker
  Arkansas Bar No. 2002114
  *bwalker@roselawfirm.com*
Ryan Smith
  Arkansas Bar No. 2018192
  *rsmith@roselawfirm.com*
ROSE LAW FIRM,
  a Professional Association
120 East Fourth Street
Little Rock, Arkansas 72201-2893
(501) 375-9131 (Telephone)
(501) 375-1309 (Facsimile)

*Attorneys for Plaintiff KB Components Plastunion AB*